IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| SAMUEL BURGOS VIVAS<br>ALICIA TORRES NIEVES<br><br>Plaintiffs<br><br>v.<br><br>CONTINENTAL CENTRAL CREDIT, INC.<br><br>Defendant | Civil No.<br><br><br>Re: Violations of the Fair Debt Collection Practices Act. |

**CLASS ACTION COMPLAINT**

**COMES NOW** Plaintiffs, **Samuel Burgos Vivas and Alicia Torres Nieves**, on behalf of themselves and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, all others similarly situated through the undersigned counsel, and before this Honorable Court respectfully state, allege, and pray as follows:

### I.   INTRODUCTION

1. This action seeks redress for the unlawful and deceptive collection practices committed by the Defendants in connection with their efforts to collect on a consumer debt against Plaintiffs and other similarly situated (coupled, "Plaintiffs"). Plaintiffs allege that Defendant violated the Fair Debt Collection Practice Act ("FDCPA") by engaging in unlawful and deceptive collection practices. Plaintiffs request declaratory and injunctive relief, as well as monetary, and punitive and actual damages based on violations of 15 U.S.C. §1692.

### II.   JURISDICTION AND VENUE

2. Jurisdiction is invoked under the provision 28 U.S.C. §1331 and 15 U.S.C. §1692(k)(d).

3. Venue is proper in this District because all the events and omissions giving rise to the claims asserted in the Complaint occurred within this judicial district. In addition, Defendant does business in this District.

### III.  THE PARTIES

4. Plaintiffs, **Samuel Burgos Vivas and Alicia Torres Nieves**, are natural persons and citizens of the Commonwealth of Puerto Rico. At all relevant times Plaintiffs have resided in the municipality of Manatií Puerto Rico. Plaintiffs are a "consumer" as such term is defined by the FDCPA.

5. Defendant, **Continental Central Credit, Inc.** (hereinafter referred as "**CCC**" or "**Defendant**") is a non-profit corporation registered to do business in the Commonwealth of Puerto Rico. CCC is a third-party collection agency that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of collecting debts. On behalf of clients, CCC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. CCC is a debt collector as such term is defined in 15 U.S.C. §1692a(6).

6. Defendants, **Insurance Companies ABC**, are the insurance companies of the CCC in this Complaint who are liable for the acts against the Plaintiffs and are therefore responsible for the damages and acts alleged in this Complaint.

7. Defendants, **John Doe and Jane Doe,** are fictitious names for unknown persons who participated in the act and omissions against Plaintiffs and/or who are successors of Defendant, all responsible for the damages suffered by the Plaintiffs.

## IV.    THE FACTS

*A. General Allegations*.

8.    Plaintiffs re-allege each and every previous allegation as if fully established herein.

9.    Plaintiffs are all natural persons.

10.   Plaintiffs allegedly owed fees and dues to a timeshare's maintenance fees and dues (Vacation Village) (hereinafter, the "Consumer Debt").

11.   The Plaintiffs, as natural persons and allegedly obligated to pay a Consumer Debt, is a 'Consumer' as such term is defined by 15 U.S.C. §1692a(3).

12.   The Consumer Debt was based on maintenance fees and dues for a timeshare interest owned by Plaintiffs. That certain timeshare interest was used for Plaintiffs' personal, household, or family purposes. Accordingly, the alleged debt was incurred for the benefit of Plaintiffs as well as their family and their household.

13.   The Consumer Debt is a "debt" as such term is defined by 15 U.S.C. §1692a(5) as it was incurred for personal, family, or household purposes.

14.   Sometime on/or before July 26, 2021, Vacation Village retained CCC to commence collection efforts on the Consumer Debt.

15.   The FDCPA defines the term "debt collector," amongst other definitions, as including: (1) "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts," and (2) any person "who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another". *See*, 15 U.S.C. §1692a(6).

16.   CCC is a collection agency that utilizes the instrumentalities of interstate commerce (i.e., telephone, e-mail, texts, US Mail, etc.) to conduct the business of collecting debts.

3

17. On behalf of clients, CCC regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

18. CCC is a "debt collector" as such term is defined in 15 U.S.C. §1692a(6).

19. Defendant sent Plaintiff a collection letter (the "Initial Communication"). The Initial Communication is dated July 26, 2021. *See*, **Exhibit A.**

20. The Initial Communication was utilized to convey information regarding the Consumer Debt.

21. The Initial Communication is a "communication" as such term is defined in 15 U.S.C. §1692a(2).

22. The Initial Communication was sent through means of interstate commerce; namely, via first-class United States Mail.

23. The Initial Communication identified the Plaintiff as a "Consumer," as such term is defined under the FDCPA.

24. CCC identified itself as a 'debt collector' in the Initial Communication; *to wit*, a "collection agency."

   *B. Allegations as to Violations of Section 1692g(a).*

25. Plaintiffs re-allege each and every previous allegation as if fully established herein.

26. The Initial Communication was sent to Plaintiffs by Defendant on behalf of an alleged creditor/client of Defendant

27. The body of the Initial Communication included the following notice:

   Unless you notify this office within thirty days after receiving this notice that you dispute the validity of this debt or any portion thereof, this office will assume this debt is valid. If you notify this office **verbally or in writing** 30 days from receiving this notice this office will: obtain verification of the debt or obtain a copy of a judgment and mail you copy of such judgement or verification. If you request of this office in **verbally or in writing** within 30 days after receiving this notice, this

> office will provide you with the name and address of the original creditor, if different from the current creditor. (Our Emphasis added).

28. The Initial Communication was required to contain a correct, truthful and complete notification of Plaintiffs verification rights as defined and outline by 15 U.S.C. §1692g(a).

29. Section 1692g(a) mandates that prior to the fifth day following an "initial communication" the debt collector must provide the consumer with a written notice containing certain information. *See,* 15 U.S.C §1692g(a)(2).

30. The information required by Section 1692g of the FDCPA includes the following:

> **"(1)** the amount of the debt;
>
> **(2)** the name of the creditor to whom the debt is owed;
>
> **(3)** a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;
>
> **(4)** a statement that if the consumer notifies the debt collector **in writing** within the thirty-day period that **the debt, or any portion thereof, is disputed**, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and
>
> **(5)** a statement that, upon **the consumer's written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

*See*, 11 U.S.C. §1692g(a).

31. The Initial Communication incorrectly informs the Plaintiffs that, in order to be entitled to obtain verification of the debt or a copy of any judgement, they may request such information verbally.

5

32. The Initial Communication incorrectly informs the Plaintiffs that, in order to be entitled to obtain the name and address of the original creditor, if different from the current creditor, they may request such information verbally.

33. The Initial Communication failed to provide **a correct statement**, under Section 1692g(a)(4)-(5).

34. The Initial Communication confused the Plaintiffs, and cause the least sophisticated consumer, to believe that: (a) a request for debt verification or copy of a judgment, or (b) the request for the name and address of the original creditor; could be made verbally. In fact, the FDCPA requires that such request must be made in writing and a verbal request – as suggested by Defendant – would be hollow and deprive the Plaintiffs of their statutory rights.

   *C.   Allegations as to Violations of Section 1692e(10).*

35. Plaintiffs re-allege each and every previous allegation as if fully established herein.

36. Defendant's Initial Communication informs the Plaintiffs that the account was referred to us by "VAC VLG@BONVNTR MST ASC PHSE VI." Id.

37. Plaintiffs does not recognize "VAC VLG@BONVNTR MST ASC PHSE VI" as a creditor to whom they allegedly owed a debt.

38. Upon information and belief, there is no client at Defendant by the name of "VAC VLG@BONVNTR MST ASC PHSE VI" rather, the information is a computer acronym. The information, however, surfaced in the Initial Communication because the same was merely prepared by a word-processing software that inserts computer acronyms into pre-defined fields.

39. Defendant's Initial Communication incorporates false representation and deceptive means because it identifies the client as "VAC VLG@BONVNTR MST ASC PHSE VI;" – an

6

unrecognizable name – thus depriving Plaintiffs of their statutory rights to be informed as to whom is collecting from them.

40. The Initial Communication confused Plaintiffs, and would confuse the least sophisticated consumer, as to the identity of the creditor on whose behalf the debt collector was attempting to collect a debt.

41. As a result of Defendant's failure to accurately describe the creditor, Plaintiffs were forced to seeks the assistance to Counsel to determine who was attempting to collect from them; thus, incurred additional fees, costs and expenses.

**IV.     COUNT I - VIOLATION OF *15 U.S.C. § 1692g(a)(4)-(5)***

42. Plaintiffs re-allege each and every previous allegation as if fully established herein.

43. Plaintiffs bring Count I on their own behalf and on behalf of others similarly situated.

44. Section 1692g expressly requires all debt collectors to communicate certain information to every consumer. Pursuant to *15 U.S.C §1692g(a)* the Defendant must provide Plaintiffs with at least the following information:

(1)     The Amount of the Debt;

(2)     The name of the creditor to whom the debt is owed;

(3)     a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4)     a statement that if the consumer **notifies the debt collector in writing** within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumers by the debt collector;;

    (5)    a statement that, upon **the consumer's written request** within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor."

*See*, 15 U.S.C §1692g(a) (Emphasis added).

45. This language, "commonly referred to as a 'validation notice,' gives the consumer the information necessary to challenge the debt allegedly owed before making payment." *See*, Russell v. Equifax A.R.S., 74 F.3d 30, 32-33 (2d Cir. 1996).

46. Even if the communication contains the full validation notice, the debt collector nonetheless violates section 1692g if the language of the notice is obscured or contradicted by other text in the communication.

47. Pursuant to the mandates of 1692g(a)(4) of the FDCPA, Defendant was obligated to inform the Plaintiffs in the initial communication that, if they disputed the Consumer Debt **in writing**, they had the right to obtain a verification of the debt or a copy of the judgement and that such information would be mailed to the Plaintiff.

48. Pursuant to the mandates of 1692g(a)(5) of the FDCPA, Defendant was obligated to inform the Plaintiffs in the initial communication that, upon the **consumer's written request** within the thirty-day period, the debt collector would provide the consumer with the name and address of the original creditor, if different from the current creditor.

49. The Initial Communication falsely stated that debt validation (verification of the debt or a copy of any judgment) could be obtained via a verbal request.

50. Under Section 1692g(a)(4), a verbal dispute is insufficient to preserve Plaintiffs' right to obtain verification of the Consumer Debt or a copy of any judgment against Plaintiffs.

51. The Initial Communication falsely stated that Plaintiffs could request the name and address of the original creditor via a verbal request.

52. Under Section 1692g(a)(5), a verbal request is insufficient to preserve the Plaintiffs right to request the name and address of the original creditor, if different from the current creditor.

*53.* Defendant's unilaterally chose not to communicate correct and accurate information, as required by Section 1692(a)(1) to the Plaintiffs, even though the FDCPA expressly requires that such information be conveyed clearly and effectively to all consumers.

54. Defendant's false, misleading, and deceptive representations in the Initial Communication violated 15 U.S.C. § 1692g(a)(4).

55. Defendant's false, misleading, and deceptive representations in the Initial Communication violated 15 U.S.C. § 1692g(a)(5).

56. Because of Defendant's false representation, Plaintiffs, as any other "least sophisticated consumer," was misled, deceived, and confused.

57. For example, because of Defendant's false and misleading representations, Plaintiffs, as any other "least sophisticated consumer", were misled to believe that the verification request could be made verbally, when in fact Section 1692g(a)(4)-(5) of the FDCPA specifically requires that such dispute and request must be made in writing.

58. As a direct result of Defendant's false and misleading representations, Plaintiffs were forced to retain counsel and incur in the costs and expenses associated therewith, to review the Initial Communication and provide legal advice.

59. As a result of Defendant's false and misleading representations, Plaintiffs would have made a verbal verification request when in fact a verbal dispute is insufficient to preserve Plaintiffs' right to have Defendant cease collection of the debt until CCC provides verification of the debt.

60. As a result of Defendant's false representations and deceptive representations, Plaintiffs suffered tangible and intangible injuries.

61. Amongst Plaintiffs' tangible injuries, Plaintiffs suffered economic damages and injuries. Economic damages include, but are not limited to, Plaintiffs retained counsel, and paid for the costs and fees associated thereto, to review the Initial Communication.

62. Additionally, Plaintiffs suffered intangible injuries. For example, the confusion, distress, and fear caused by Defendant's false, misleading, and deceptive representations are precisely the sort of abusive debt collection practices which Congress sought to protect in enacting the FDCPA.

63. The engagement of counsel, as a result of the confusion created by Defendant's violation of the FDCPA imposed an economic cost and expense on Plaintiffs that but for Defendant's false, misleading and deceptive representations Plaintiffs would not have incurred.

64. As a result of Defendant's conduct, Plaintiffs are entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k* to remedy the economic damages created by Defendant's conduct.

65. As a result of Defendants' conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

### V. **CLASS ALLEGATIONS – COUNT I (*15 U.S.C. § 1692g(a)(4)-(5)*)**

66. Plaintiffs re-allege each and every previous allegation as if fully established herein.

67. Plaintiffs bring Count I on behalf of a class of similarly situated persons, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

68. The Class consists of: (a) all natural persons within the United States of America; (b) who were sent a letter in the forms represented by **Exhibit A**, (c) on or after a date one year prior to the filing of this action; and (d) on or before a date 20 days after the filing of this Complaint.

69. The class members are so numerous that joinder is impracticable.

70. On information and belief, based on the use of a form letter such as the one attached hereto as **Exhibit A**, there are more than 10,000 natural persons within the class as defined herein.

71. There are questions of law and fact common to all class members, which predominate over any question that affect only individual class members.

72. The predominant questions are:

    a. Whether **Exhibit A** is a form letter;

    b. Whether **Exhibit A** violates the FDCPA; and

    c. The liability of CCC for the action of sending **Exhibit A**.

73. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

74. Plaintiffs will fairly and adequately represent the interest of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

75. A class action is superior to other alternative methods of adjudicating this dispute, in that:

    a. Individual cases are not economically feasible,

    b. Many consumers may not realize their rights are violated, and

    c. Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

## VI. COUNT II - VIOLATION OF *15 U.S.C. § 1692g(a)(2)*

76. Plaintiffs re-allege each and every previous allegation as if fully established herein.

77. Plaintiffs bring Count II on their own behalf and on behalf of others similarly situated.

78. Pursuant to the mandates of 1692g(a)(1) of the FDCPA, Defendant was obligated to inform the Plaintiffs "the name of the creditor to whom the debt is owed."

79. The Initial Communication falsely identifies the entity to whom the alleged Consumer Debt was owed as" "VAC VLG@BONVNTR MST ASC PHSE VI."  See, **Exhibit A**.

80. Upon information and believe, "VAC VLG@BONVNTR MST ASC PHSE VI" is not an existing entity.

81. The Initial Communication falsely stated that the alleged Consumer Debt was owed to: "VAC VLG@BONVNTR MST ASC PHSE VI."

82. Defendant's false, misleading, and deceptive representations in the Initial Communication violated 15 U.S.C. § 1692g(a)(2).

83. Because of Defendant's false representation, Plaintiffs, as any other "least sophisticated consumer," was misled, deceived, and confused.

84. As a direct result of Defendant's false and misleading representations, Plaintiffs were forced to retain counsel and incur in the costs and expenses associated therewith, in order to determine to whom the alleged Consumer Debt was owed.

85. But for Defendant's false representations Plaintiffs would not have incurred in the costs and expenses related to obtaining counsel and associated costs.

86. As a result of Defendant's false representations and deceptive representations, Plaintiffs suffered tangible and intangible injuries.

87. Amongst Plaintiffs' tangible injuries, Plaintiffs suffered economic damages and injuries. Economic damages include, but are not limited to, Plaintiffs retained counsel, and paid for the costs and fees associated thereto, to review the Initial Communication and determine the entity who was attempting to collect from him.

88. Additionally, Plaintiffs suffered intangible injuries. For example, the confusion, distress, and fear caused by Defendant's false, misleading, and deceptive representations are precisely the sort of abusive debt collection practices which Congress sought to protect in enacting the FDCPA.

89. The engagement of counsel, as a result of the confusion created by Defendant's violation of the FDCPA imposed an economic cost and expense on Plaintiffs that but for Defendant's false, misleading and deceptive representations Plaintiffs would not have incurred.

90. As a result of Defendant's conduct, Plaintiffs are entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k* to remedy the economic damages created by Defendant's conduct.

91. As a result of Defendants' conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

## VII.   COUNT III - VIOLATION OF *15 U.S.C. § 1692e*

92. Plaintiffs re-allege each and every previous allegation as if fully established herein.

93. Plaintiffs bring Count III on their own behalf and on behalf of others similarly situated.

94. Section *1692e,* in its pertinent part, states:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

13

>   …
>
>   (10) The **use of any false representation** or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

95. The FDCPA prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *See*, 15 U.S.C. § 1692e.

96. "The FDCPA is 'a strict liability statue' and, thus, there is no need for a plaintiff to plead or prove that a debt collector's misrepresentation of a debt obligation was intentional." *See*, Vangorden v. Second Round, Ltd. P'ship, 897 F.3d 433, 437-38(2d Cir. 2018) (citing Arias v. Gutman, Mintz, Baker & Sonnenfeldt LLP, 875 F.3d 128, 134 (2d Cir. 2017)). "The strict liability standard applies to § 1692e claims." *See*, Wahl v. Midland Credit Mgmt., Inc., 556 F.3d 643, 646 (7th Cir. 2009).

97. Therefore, a "[d]ebt collectors may not make false claims, period." *See*, Randolph v. IMBS, Inc., 368 F.3d 726, 730 (7th Cir. 2004); *see also*, Valle v. Westhill Exch., LLC, GJH-19-2304 (D. Md. Mar. 24, 2021) ("[A] debt collector may violate §1692e even if it unintentionally makes a false statement."); Turner v. J.V.D.B. & Assocs., Inc., 330 F.3d 991, 995 (7th Cir. 2003) ("[U]nder §1692e ignorance is no excuse."); Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996).

98. Section 1692e prohibits the "use [of] any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer". *See*, 15 U.S.C. §§ 1692e(10).

99. Defendant's Initial Communication incorporates false representation and deceptive means because it identifies the client as "VAC VLG@BONVNTR MST ASC PHSE VI."

100. The Initial Communication is deceptive because the least sophisticated consumer would not understand who or what entity "VAC VLG@BONVNTR MST ASC PHSE VI" relates to and/or what entity is attempting to collect from them.

101. By failing to clearly identify and inform the Plaintiffs the entity to whom the debt was owed, Defendant attempted to collect a debt in a deceptive and misleading manner.

102. Defendant's false, misleading, and deceptive representations in the Initial Communication violated 15 U.S.C. § 1692e(10).

103. Because of Defendant's false, misleading and deceptive representations, Plaintiffs were confused as to the identity of whom was attempting to collect from them.

104. As a result of Defendant's false and misleading representations, Plaintiffs were forced to retain counsel – in a different and unrelated proceeding to this one - and incur in the costs and expenses associated therewith, to review the Initial Communication and provide legal advice.

105. As a result of Defendant's false representations and deceptive representations, Plaintiffs suffered tangible and intangible injuries.

106. Amongst Plaintiffs' tangible injuries, Plaintiffs suffered economic damages and injuries. Economic damages include, but are not limited to, Plaintiffs retained counsel, and paid for the costs and fees associated thereto, to review the Initial Communication.

107. Additionally, Plaintiffs suffered intangible injuries. For example, the confusion, distress, and fear caused by Defendant's false, misleading, and deceptive representations are precisely the sort of abusive debt collection practices which Congress sought to protect in enacting the FDCPA.

108. The engagement of counsel, as a result of the confusion created by Defendant's violation of the FDCPA imposed an economic cost and expense on Plaintiffs that but for Defendant's false, misleading and deceptive representations Plaintiffs would not have incurred.

109. As a result of Defendant's conduct, Plaintiffs are entitled to an award of statutory damages pursuant to *15 U.S.C. §1692k* to remedy the economic damages created by Defendant's conduct.

110. As a result of Defendant's conduct, Plaintiffs are entitled to an award of costs and attorney fees pursuant to *15 U.S.C. §1692k.*

### VIII. CLASS ALLEGATIONS – COUNT II and III (*15 U.S.C. § 1692g(a)(2), 1692e*)

111. Plaintiffs re-allege each and every previous allegation as if fully established herein.

112. Plaintiffs bring Count II and III on behalf of a class of similarly situated persons, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

113. The Class consists of: (a) all natural persons within the United States of America; (b) who were sent a letter in the forms represented by **Exhibit A**, (c) on or after a date one year prior to the filing of this action; and (d) on or before a date 20 days after the filing of this Complaint.

114. The class members are so numerous that joinder is impracticable.

115. On information and belief, based on the use of a form letter such as the one attached hereto as **Exhibit A**, there are more than 4,000 natural persons within the class as defined herein.

116. There are questions of law and fact common to all class members, which predominate over any question that affect only individual class members.

117. The predominant questions are:

    a. Whether **Exhibit A** is a form letter;

    b. Whether **Exhibit A** violates the FDCPA; and

      c.   The liability of CCC for the action of sending **Exhibit A**.

118.   Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

119.   Plaintiffs will fairly and adequately represent the interest of the class members. Plaintiffs have retained counsel experienced in consumer credit and debt collection abuse cases.

120.   A class action is superior to other alternative methods of adjudicating this dispute, in that:

      a.   Individual cases are not economically feasible,

      b.   Many consumers may not realize their rights are violated, and

      c.   Congress prescribed class actions as a principal enforcement mechanism under the FDCPA.

**WHEREFORE**, in view of the foregoing, Plaintiffs respectfully request from this Honorable Court to enter a judgment in favor of the Plaintiffs and the class members, granting Plaintiffs and the class members the remedies requested in this Complaint and such other remedies as may be fair and equitable.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico this 31th day of January 2022.

**THE BATISTA LAW GROUP, PSC.**
P.O. Box 191059
San Juan, PR. 00919
Telephone: (787) 620-2856
Facsimile: (787) 777-1589

/s/ Jesus E. Batista Sánchez
Jesus E. Batista Sánchez, Esq.
USDC-PR No. 227014
E-mail: jeb@batistasanchez.com

<u>/s/ William Rivera Vélez</u>
William Rivera Vélez, Esq.
USDC-PR No. 229408
E-mail:  wrv@batistasanchez.com
