## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

SAMUEL BURGOS RODRIGUEZ
BLANCA VIVAS VALENTIN

Plaintiffs,

v.                                                             Civil No. 22-01056 (DRD)

CONTINENTAL CENTRAL CREDIT, INC.;
MONTEREY FINANCIAL SERVICES, LLC.

Defendants.

## OPINION AND ORDER

On August 23, 2022, Plaintiffs Samuel Burgos Rodriguez and Blanca Vivas Valentin ("Plaintiffs") filed the instant matter. Plaintiffs seek redress for unlawful and deceptive collection practices allegedly committed by Monterey Financial Services, LLC. ("Defendant" or "Monterey") in connection with their efforts to collect on a consumer debt against Plaintiffs and others similarly situated (coupled, "Plaintiffs"). Plaintiffs request declaratory and injunctive relief and monetary damages based on violations of the Fair Debt Collection Practice Act ("FDCPA") 15 U.S.C. § 1692.

Pending before the Court is Defendant Monterey Financial Services, LLC's Motion to Dismiss (Doc. No. 23), Plaintiffs' response in opposition (Doc. No. 29), Monterey's reply (Doc. No. 29), and Plaintiffs' sur-reply (Doc. No. 37). Defendant Monterey filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) and Fed. R. Civ. P. 12(b)(6) for (1) lack of personal jurisdiction and (2) failure to state a claim upon which relief can be granted. For the reasons discussed herein, Monterey's Motion to Dismiss (Doc. No. 23) is hereby **DENIED.**

## I.   BACKGROUND

Plaintiffs owed fees and dues from a timeshare's maintenance fees and dues which was incurred for personal, family, or household purposes. Continental Central Credit ("CCC") was hired to collect those fees and dues. On July 26, 2021, CCC sent a collection letter to ("Plaintiffs") indicating the intended collection of a debt. Plaintiffs allege that this letter violated the FDCPA and seek redress.

The FDCPA requires debt collectors to disclose to consumers the "name of the creditor to whom the debt is owed", § 1692g(a)(2); that "if the consumer notifies the debt collector <u>in writing</u> … that the debt … is disputed, the debt collector will obtain verification" to mail to the consumer, § 1692g(a)(4) (emphasis added); and that "upon the consumer's <u>written request</u> … the debt collector will provide the … name and address of the original creditor if different from [] current creditor." § 1692g(a)(5) (emphasis added). This written notice must be supplied within 30 days of the initial communication or in the initial communication. § 1692g(a).

In its initial communication, CCC identified "VAC VLG@BONVNTR MST ASC PHSE VI" as the creditor to whom the debt was owed. (Doc. No. 15-1). The same letter contained the following:

> "if you notify this office verbally or in writing … this office will: obtain verification of the debt or obtain a copy of a judgement and mail you copy of such judgment of verification." (Doc. No. 15-1) (emphasis added).

On September 7, 2021, Monterey published a press release indicating it had acquired CCC. (Doc. No. 29-3). Other publications authenticated the acquisition. (Doc. No. 29-4 through 5). The details of the purchase agreement are unknown.

On or around June 17, 2022, Plaintiffs' counsel contacted Monterey telephonically to locate a service of process address for CCC. In the conference, an employee confirmed the acquisition and requested the Original Complaint be faxed to him. Counsel for Monterey confirmed receipt of the fax later that day. (Doc. No. 29-7).

On June 22, 2022, Attorney Ortiz, representing Plaintiffs, conferenced with Attorney Scherer, counsel for Monterey. The essence of the conference call was to inform Monterey that they faced liability as successors in interest for the actions of CCC plead in the Original Complaint on June 17th. Scherer confirmed a transaction between Monterey and CCC but refused service of process. Plaintiffs sent an amended federal complaint to Monterey on August 23, 2022.

Defendant Monterey moves for dismissal, raising 3 issues: 1) the Court has no general or specific jurisdiction over Monterey, 2) this claim is barred by the statute of limitations as applied to Monterey, and 3) this complaint fails to state a claim upon which relief may be granted.

## II.   STANDARD OF REVIEW

A motion to dismiss can only be granted if there were no set of facts that would entitle plaintiffs to a verdict on the claims issue. The Court accepts as true that "all well-pleaded facts alleged in the complaint and draw all reasonable inferences therefrom in the pleader's favor." Butler v. Balolia, 736 F.3d 609, 612 (1st Cir. 2013). A "defendant's evidence is only relevant to the extent that it is uncontradicted by the plaintiff." Muñiz v. Walgreen Co., 46 F.Supp.3d 117, 122 (D.P.R. 2014).

## III.   DISCUSSION

## A.  The Court has Jurisdiction Over Monterey

### a.  Standard of Review for 12(b)(2) Motion to Dismiss for Lack of Jurisdiction

A defendant may, in response to an initial pleading, file a motion to dismiss the complaint for lack of jurisdiction over subject matter and for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(2), 12(b)(6). When faced with a motion to dismiss under both 12(b)(2) and 12(b)(6), "a district court, absent good reason to do otherwise, should ordinarily decide the 12(b)(2) motion first." Northeast Erectors Ass. v. Secretary of Labor, 62 F.3d 37, 39 (1st Cir. 1995) (citing Bell v. Hood, 327 U.S. 678, 682 (1946)).

3

Where the motion to dismiss for want of personal jurisdiction "is made at the inception of the case and the issue of jurisdiction is not intertwined with the merits, the prima facie approach controls." Motus, LLC V. CarData Consultants, Inc., 23 F.4th 115, 121 (1st Cir. 2022). Thus, the question at hand is "whether the plaintiff has proffered facts that, if credited, would support all facts essential to personal jurisdiction." Motus, LLC, 23 F.4th at 121 (quotations omitted). Such a showing requires more than mere reference to unsupported allegations in the plaintiff's pleadings. Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992). The plaintiff must satisfy "both the forum's long arm statute and the due process clause of the constitution." Gar-Tec Prods., 967 F.2d at 675.

**b.  The Court has General Jurisdiction Over Continental Central Credit**

Federal district courts have general jurisdiction when "the litigation is not directly founded on the defendant's forum-based contacts, but the defendant has nevertheless engaged in continuous and systematic activity, unrelated to the suit, in the forum state." United Elec., Radio and Mach. Workers of America v. 163 Pleasant Street Corp., 960 F.2d 1080, 1088 (1st Cir. 1992). Neither party contests that the Court has jurisdiction over CCC. At the time of the events giving rise to the claims and at the time the complaint was filed, CCC was a non-profit corporation registered to do business in the Commonwealth of Puerto Rico. (Doc No. 15 at ¶ 5).

**c.  Plaintiffs Plead Sufficient Facts to Plausibly Overcome Presumption of Corporate Separateness**

Plaintiffs argue the Court has jurisdiction over Monterey because "Monterey is the surviving entity from the Monterey/CCC merger." (Doc. No. 15 at ¶¶ 6, 29). Monterey replies that Plaintiffs "failed to overcome the presumption of corporate separateness … [because they] offered no iota of substantive fact." (Doc. No. 23 at 12-13). Monterey further disputes that it is a successor-in-interest, because it "acquired certain assets of Continental, but not its liabilities." (Doc. No. 34 at 3).

Generally, where one company sells or transfers its assets to another company, the latter is not liable unless an avoidance of liability would be unjust. Fehl v. S.W.C. Corp., 433 F.Supp. 939, 945 (D. Del. 1977). For example, if "there has been a de facto merger or consolidation," Fehl, 433 F.Supp. at 945-46, "the successor corporation is a mere continuation of the predecessor under a different corporate name," Fehl, 433 F.Supp. at 945-46, "the transaction has been entered fraudulently," Knapp v. North American Rockwell Corp., 506 F.2d 361, 363-64 (3d Cir. 1974), or "[purchaser] is not a 'good faith' purchaser," Explosives Corp. of Am. v. Garlam Enterprises Corp., 615 F.Supp. 364, 369 (D.P.R. 1985), then the purchaser may be held responsible for predecessor's liabilities. Monterey's president submitted an affidavit attesting that liabilities were not explicitly acquired. (Doc. No. 34-1 at ¶ 5). The Court finds that this affidavit neither necessarily covers all the purchase agreements, (Doc. No. 34-1 at ¶ 5 (referring only to "a certain asset purchase agreement")), nor conclusively excludes the Plaintiffs from showing that Monterey is a successor-in-interest upon a different legal theory.

To establish jurisdiction to survive a motion to dismiss, a plaintiff must merely "proffer[] evidence that, if credited, is enough to support findings of all facts essential to [] jurisdiction." Walgreen Co., 46 F.Supp.3d at 122. Additionally, "a presumption of corporate separateness [] must be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 905 (1st Cir. 1980). Plaintiffs point to clear evidence to rebut such a presumption at the motion to dismiss phase.

The news articles and Defendant's own press release cast serious doubt on the presumption of corporate separateness between Monterey and CCC. On September 1, 2021, the President of Monterey, who later wrote the aforementioned affidavit, stated "we are thrilled to be bringing on every employee currently working at Continental … With this acquisition, our culture, our people, and our technological capabilities will improve." (Doc. No. 29-3). Insofar as this evidence contradicts the affidavit, we resolve discrepancies in favor of the plaintiff. Plaintiff also references at least two other

reputable sources in the collections industry that clearly reaffirmed the acquisition. AccountsRecovery.net reported, "Monterey Financial Services announced earlier this week that it had purchased Continental Central Credit." (Doc. No. 29-4). Mergr.com reported, "Monterey Financial Services acquired financial services company Continental Central credit." (Doc. No. 29-5).

Until an evidentiary hearing is held, and discovery can reveal the specifics of the transaction, the Court must rule in favor of Plaintiffs. For the purpose of this motion to dismiss, the Court finds that it has general jurisdiction over CCC, and that Monterey is a successor-in-interest to CCC.

## B. Claim Not Barred by Applicable Statute of Limitations

The Fair Debt Collection Practice Act ("FDCPA") states "an action to enforce any liability created by this subchapter may be brought … within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The alleged violation occurred on July 26, 2021. (Doc. No. 15-1). Plaintiffs sent the Original Complaint listing CCC as defendant to Monterey less than a year later on June 17, 2022. (Doc. No. 29-6). Plaintiffs sent the Amended Complaint (amended to include Monterey) to Defendant on August 23, 2022. (Doc. No. 15). Monterey argues that because Plaintiffs sent the Amended Complaint over a year after the date of the violation, the claims are barred by the FDCPA statute of limitation. The Defendant is incorrect. Although Plaintiffs filed the Amended Complaint over a year after the violation, it dates back to the Original Complaint two months prior.

An Amended Complaint which adds a party relates back to the originally filed complaint when:

> "(B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>    (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>    (ii) knew or should have known that the actions would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1).

6

Monterey disingenuously disputes that it received notice and that it knew or should have known actions would be brought. (Doc. No. 23 at 11-12). Plaintiffs showed evidence of a meeting with Monterey's counsel, on June 22, 2022, where Plaintiffs' counsel informed Monterey to expect legal action to be taken under a theory of merger. (Doc. Nos. 29 at 17, 29-6, 29-7). On June 17, 2022, Monterey received, reviewed, and considered a copy of the Original Complaint. Moreover, since June 22, 2022, when Plaintiffs' attorneys conferenced with Monterey's counsel, Monterey has known or should have known that they faced liability as successor in interest for the actions of CCC plead in the Original Complaint. The Court finds that the Amended Complaint is properly dated back to the Original Complaint and denies dismissal for statute of limitations violation.

## C. Plaintiffs Plead Sufficient Facts to Plausibly State a Claim under the FDCPA

### a. Standard of review for 12(b)(6) Motion to Dismiss for Failure to State a Claim under FDCPA

Monterey moves to dismiss for failure to state a claim, arguing that Plaintiffs' Complaint failed to state a plausible claim to relief under the FDCPA. See 15 U.S.C. §§ 1692g(a), 1692e(10). A complaint should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6) when a plaintiff "does not state a claim to relief that is plausible on its face." Colón-Andino v. Toledo-Dávila, 634 F.Supp.2d 220, 229 (D.P.R. 2009) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). A claim is plausible on its face when the complaint alleges sufficient facts "to raise a right to relief above the speculative level." Bell At. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint adequately stating a claim proceeds "even if 'recovery is very remote and unlikely.'" Roman-Montañez v. Torres-Mendez, 284 F.Supp.3d 134, 137 (D.P.R. 2018) (quoting Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 17 (1st Cir. 2011)).

Whether a collection letter violates the FDCPA is a question of law to be determined by the Court. See Berger v. Northland Grp., Inc., 886 F.Supp.2d 59, 63 (D. Mass. 2012) (citing Chiang v. Verizon New England Inc., 595 F.3d 26, 34 (1st Cir. 2010)). The Court reviews a communication from the objective perspective of the hypothetical least sophisticated consumer. Pollard v. L. Off. Of Mandy

L. Spaulding, 766 F.3d 98, 103-104, 103 n.4 (1ˢᵗ Cir. 2014); Rocha v. Zwicker & Associates, P.C., 474 F.Supp.3d 388, 393 (D. Mass. 2020). The least sophisticated consumer possesses rudimentary knowledge about the financial world and can make basic logical deductions and inferences. Pollard, 766 F.3d at 104; Pettit v. Retrieval Masters Creditor Bureau, Inc., 211 F.3d 1057, 1060 (7th Cir. 2000).

In reading the statute, the Court's starting point is the plain meaning of the text. Stair ex rel. Smith v. Thomas & Cook, 254 F.R.D. 191, 196 (D.N.J. 2008). In the absence of a clear statutory directive, "[b]ecause the FDCPA is a remedial statute, [courts have] construe[d] its language broadly, so as to effect its purpose." Thomas & Cook, 254 F.R.D. at 196 (quoting Brown v. Card Serv. Ctr., 464 F.3d 450. 453 (3d Cir. 2006)).

**b. Plaintiffs Can Plausibly Show a Claim Under 15 U.S.C. §§ 1692g(a)(2) & 1692e(10)**

Monterey argues Plaintiffs' Complaint does not show facts that lead to a plausible claim under § 1692g(a)(2). (Doc. No. 23 at 15). This section states that "unless the following information is contained in the initial communication", the debt collector must send the consumer a written notice within five days after the initial notice containing "the name of the creditor to whom the debt is owed." 15 U.S.C. § 1692g(a)(2). Furthermore, "the use of any false representation or deceptive means to collect or attempt to collect any debt" is forbidden. 15 U.S.C. § 1692e(10).

Monterey disputes that naming creditor as "VAC VLG@BONVNTR MST ASC PHSE VI" violated § 1692g(a)(2), arguing that the section does not forbid acronyms, and § 1692e(10), arguing that only unreasonable consumers would find the acronym confusing. (Doc. No. 15 ¶ 86).

Monterey cites Leonard v. Zwicker & Associates, P.C., 713 Fed.Appx. 879 (11ᵗʰ Cir. 2017), to show § 1692g(a)(2) does not "define 'name' as 'full business name' or 'name of incorporation.'" 713 Fed.Appx. at 883. Monterey omits context. The communication at issue in Zwicker identified the creditor as "American Express" rather than "American Express Receivable Financing Corporation." 713 Fed.Appx. at 881. Zwicker more accurately holds that the debt collector may use "the creditor's

full business name, the name under which the creditor usually transacts business, or a commonly used acronym." 713 Fed.Appx. at 883. The string of letters used by Defendant is none of these.

Our own circuit has shown a preference for the full company name even when the acronym is more commonly used. See Sullivan v. Credit Control Services, Inc., 745 F.Supp.2d 2, 8 (D. Mass. 2010) (holding debt collector did not need to use the more publicly recognized acronym because Section 1692g(a)(2) "required [debt collector] to include the name of the creditor." (emphasis added)). While the full business name is per se acceptable under § 1692g(a)(2), other commonly used abbreviations and acronyms under which the creditor usually conducts business are also permitted if the least sophisticated consumer would recognize them. The Court finds that "VAC VLG@BONVNTR MST ASC PHSE VI" does not meet this standard.

Section 1692e(10) of the FDCPA forbids debt collectors from the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." Waters v. Kream, 770 F.Supp.2d 434, 436 (D. Mass 2011). A representation from a debt collector is deceptive "when it can be reasonably read to have two or more different meanings, one of which is inaccurate." Waters v. Kream, 770 F.Supp.2d 434, 436 (D. Mass. 2011) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 35 (2d Cir. 1996)). A "facial lack of clarity" as to the name of the debtor is a violation as a matter of law. Steffek v. Client Services, Inc., 948 F.3d 761, 766 (7th Cir. 2020).

Monterey disputes that the acronym was deceptive or misleading because a reasonable consumer could have discovered the full name with a simple internet search. Monterey cites no caselaw demonstrating an affirmative responsibility on the consumer to investigate any facially unclear terms in a communication from the debt collector. Instead, debt collectors have an affirmative responsibility under the law to "identify clearly the current holder of the debt." Steffek, 948 F.3d at 763.

The Court finds that Plaintiffs have plead sufficient facts to plausibly show that naming "VAC VLG@BONVNTR MST ASC PHSE VI" as the violates §§ 1692g(a)(2) & 1692e(10).

c. **Plaintiffs Can Plausibly Show a Claim Under 15 U.S.C §§ 1692g(a)(4)-(5)**

Monterey moves to dismiss Plaintiffs' §§ 1692g(a)(4)-(5) claim. The FDCPA gives consumers the right to seek verification of the validity of the debt. 15 U.S.C. § 1692g(b). This section, known as validation notice, requires the debt collector to include a disclosure that "if consumer notifies … in writing … debtor-collector will obtain verification" or "upon consumer's written request … debt collector will provide name and address." §§ 1692g(a)(4)-(5) (emphasis added). The disclosure must be sent in the initial communication or within thirty days after the initial communication. 15 U.S.C. § 1692g(a). Any communications "during the 30–day period may not overshadow or be inconsistent with" the disclosure of the consumer's right to request validation. 15 U.S.C. § 1692g(b).

The communication sent by CCC stated, "if you notify this office verbally or in writing," then CCC would supply validation. (Doc. No. 15-1). Plaintiffs argue that the wording is inconsistent with the right to request validation because it implies that a consumer may exercise their right verbally when the statute requires it to be exercised in writing. (Doc. No. 29 at 24). Defendant on the other hand argues that the correct interpretation of the statute reads the in-writing requirement as a sufficient but not necessary condition to exercise the right. (Doc. No. 34 at 8).

"Debtors can trigger the [validation] right under subsections [1692g](a)(4) and (a)(5) only through written dispute." Camacho v. Bridgeport Financial Inc., 430 F.3d 1078, 1081 (9th Cir. 2005); see also Bishop v. Ross Earle & Bonan, P.A., 817 F.3d 1268, 1274 (11th Cir. 2016); Hooks v. Forman, Holt, Eliades & Ravin, LLC., 717 F.3d 282, 286 (2nd Cir. 2013); Caprio v. Healthcare Revenue Recovery Grp. LLC, 709 F.3d 132, 138 (3rd Cir. 2013); Miller v. Payco-General American Credits, Inc., 943 F.2d 482, 484 (4th Cir. 1991).

Defendant argues that the Ninth Circuit, Eleventh Circuit, Second Circuit, Third Circuit, Fourth Circuit, and Plaintiffs have misstated the law. (Doc No. 34 at 8). "Congress's intent in enacting the FDCPA [] calls for a broad construction of its terms in favor of the consumer." Ramirez v. Apex

<u>Financial Management, LLC</u>, 567 F.Supp.2d 1035, 1041 (N.D. Ill. 2008)). Defendant argues "the initial communication went above and beyond what is necessary under the law." (Doc. No. 34 at 9). Furthermore, Defendant prefers to ignore aforementioned case law as dicta. (Doc. No. 34 at 9). This would be a major departure from other courts which have held "Sections 1692g(a)(4), 1692g(a)(5), and 1692g(b) explicitly require written communication, whereas section 1692g(a)(3) plainly does not." <u>Clark v. Absolute Collection Service, Inc.</u>, 741 F.3d 487, 490 (4th Cir. 2014).

      Other circuits have justified this through the plain meaning of the statute. The Court follows their holdings. Additionally, the Court finds a strict written requirement for Sections 1692g(a)(4) and 1692g(a)(5) benefits the consumer by providing a bright line rule that is easy for unsophisticated consumers to understand and debt collectors to follow. Requiring written communications to enforce the validation right will promote more efficient adjudication of this issue in the future, where the Court will be able to rely on tangible evidence of communication rather than potentially conflicting accounts of what was discussed orally. Allowing an oral communication to trigger invocation of the validation right opens the door to malicious behavior from debt collectors.

      Defendant argues that even if we hold a written requirement for §§ 1692g(a)(4)-(5), the letter still does not overshadow the right to request validation in writing. (Doc. No. 23 at 17). "It does not follow that simply because a collection letter instructs a consumer to contact a debt collector that the validation notice is necessarily overshadowed or contradicted." <u>Lerner v. Forster</u>, 240 F.Supp.2d 233, 238 (E.D.N.Y.2003); <u>see also Ehrich v. I.C. System</u>, 681 F.Supp.2d 265, 271 (E.D.N.Y.2010) ("[W]hen a debt collection letter unambiguously provides the required FDCPA notice and merely supplements it with a phone number, there is no § 1692g violation."); <u>Urquhart v. Credit Bureau of Napa County, Inc.</u>, 2019 WL 2298697 at *3 (M.D. Ga. May 30, 2019) (a debt collector may provide information to plaintiff on how to submit a dispute orally or in writing "without overshadowing or contradicting."); <u>Denciger v. Network Recovery Servs., Inc.</u>, 493 F.Supp.3d 138, 142 (E.D.N.Y. 2020) (dismissing

FDCPA claim where letter offered plaintiff ability to dispute the debt orally or in writing). Defendant unconvincingly cites Urquhart, Denciger, and Ehrich out of context. (Doc No. 34 at 8-9).

Firstly, Denciger refers to a debt dispute which is governed by § 1692g(a)(3), not a validation notice under §§ 1692g(a)(4)-(5). Section 1692g(a)(3) requires a disclosure "that unless the consumer, within thirty days after receipt of the notice, dispute the validity of the debt, or any portion thereof, the debt will be assume to be valid by the debt collector …" 15 U.S.C. § 1692g(a)(3). Notably, there is no written requirement for a debt dispute, unlike for validation notice. The Court will not apply Denciger's interpretation of § 1692g(a)(3) debt disputes to the §§ 1692g(a)(4)-(5) validation notice.

Urquhart and Ehrich also arise out of a debt dispute under § 1692g(a)(3) but also address whether a request to contact the debt collector via phone overshadows or contradicts a validation notice. In Urquhart, the letter's second paragraph contains "specific requirements (that [p]laintiff submit her dispute in writing) to invoke enhanced rights (verification of the debt and information regarding the original creditor)." 2019 WL 2298697 at *3. The letter's third paragraph stated "[i]f you would like to submit a dispute you can call us at 877-256-2510 or send it by mail to: [address given]." Urquhart, 2019 WL 2298697 at *1. Urquhart held that just because "the letter then provided information to [p]laintiff on how to submit a dispute orally or in writing does not contradict or even make less clear the fact that she could only invoke certain rights in writing." 2019 WL 2298697 at *3. In Ehrich, the letter at issue contained an instruction to call, in Spanish, in the same paragraph as the validation notice. 681 F.Supp.2d at 267-8. Thus, it overshadowed the validation notice because although the font was the same, Spanish speakers would have focused on Spanish instructions. Ehrich, 681 F.Supp.2d at 267-8.

These examples along with others clearly show that where the validation notice clearly shows the request must be made in writing, offering a phone number does not overshadow the requirement. E.g., Miller v. Wolpoff & Abramson, L.L.P., 321 F.3d 292, 310 (2d Cir. 2003) ("here a validation notice

plainly specifies the FDCPA contact must be in writing ... a reasonable consumer ... could [not] be misled into thinking that the clear obligation to request validation in writing was somehow modified by ... the invitation to call."); Lerner v. Forster, 240 F.Supp.2d 233, (holding a letter which offered a phone number to arrange a payment schedule in a separate paragraph than the validation notice as not overshadowing); Oberther v. Midland Credit Mgmt., Inc., 45 F. Supp. 3d 125, 133 (D. Mass. 2014) ("repeated emphasis on calling, standing alone, [did not] overshadow[] the validation notice.").

In all these cases, letters provided a phone number in a separate sentence or paragraph from the validation notice. Here, the letter intended to convey that "an oral request would allow the Plaintiffs to verify such a debt." (Doc. No. 34 at 10). The Court finds that this language is clearly inconsistent with the law. Consumers must request validation in writing.

Accordingly, Defendant's Motion to Dismiss (Docket No. 23) is hereby **DENIED**.

## IV.    CONCLUSION

For the aforementioned reasons, the Court hereby **DENIES** Defendant's Motion to Dismiss (Docket No. 23).

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 21st day of September, 2023.

/s/ DANIEL R. DOMÍNGUEZ

DANIEL R. DOMÍNGUEZ

U.S. District Judge